IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BONNIE J. KENNY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. |
| | ) |
| UNIVERSITY OF DELAWARE; | ) TRIAL BY JURY DEMANDED |
| CHRISSI RAWAK, individually and in | ) |
| her capacity as Athletic Director of the | ) |
| University of Delaware; and THOMAS | ) |
| LaPENTA, individually and in his capacity | ) |
| as Human Resources Director, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

1. Plaintiff Bonnie J. Kenny ("Kenny") brings this action against Defendants University of Delaware ("UD"), Chrissi Rawak ("Rawak"), and Thomas LaPenta ("LaPenta") (collectively "Defendants") arising from their decision to terminate the employment of Kenny due to sexual orientation, marital status, and age; in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1343, and 19 *Del. C.* § 714. This action arises under the Fourteenth Amendment to the United States Constitution, 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1983, and 19 *Del. C.* § 711(a).

3. Venue in this Court is proper under 28 U.S.C. § 1391 and this Court has personal jurisdiction over the Defendants in this matter because the events giving rise to these claims occurred in Delaware.

## Parties

4. Kenny is a citizen of the United States and a resident of Delaware. Kenny is 55 years old (DOB 3/7/62).

5. Rawak is the UD Athletic Director. She is sued in her individual and her official capacity.

6. LaPenta is the UD Director of Human Resources. He is sued in his individual and his official capacity.

7. UD is a corporation formed and operating under Chapter 51 of Title 14 of the Delaware Code.

## Exhaustion Of Administrative Remedies

8. Kenny exhausted required administrative remedies prior to bringing this action. She filed a charge of discrimination with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC") on February 9, 2017. Kenny's charge of discrimination details her allegations of sexual orientation, marital status and age discrimination and is incorporated herein by reference.

9. The DDOL issued a right to sue notice on May 26, 2017, attached as Exhibit 1. The EEOC issued a right to sue notice on June 21, 2017, attached as Exhibit 2.

## Factual Background

10. Immediately after graduating from College, Kenny secured the head coaching position at University of South Carolina, and served as a head coach for the next 32 years until she was terminated by UD. Kenny served as head volleyball coach at the University of South Carolina from August 1984 through May 1993 bringing the team to the NCAA Tournament in her first year. From June 1993 through February 2002, Kenny was the head volleyball coach at the

University of Massachusetts. From February 2002 through October 5, 2016, Kenny was the UD head volleyball coach.

    11.    As head coach at UD, Kenny inherited a volleyball team that had suffered through four consecutive years of losing seasons. In Kenny's 14 years and 8 months of service at UD, her success as the head coach can be summarized as follows:

    (a)    Advanced to the Colonial Athletic Association ("CAA") Tournament 12 times (2001, 2002, 2004, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2014, 2016);

    (b)    Advanced to CAA finals 2004, 2007, 2008, 2010, 2012, and 2016;

    (c)    34 All-Conference players;

    (d)    2 UD Hall of Fame Inductees;

    (e)    19 All-CAA Tournament team players;

    (f)    4 CAA Tournament Outstanding Players;

    (g)    3 All-America honors;

    (h)    5 All-Region honors;

    (i)    2 CAA Scholar Athlete of the Year;

    (j)    9 CAA Position Players of the Year;

    (k)    1 CAA Player of the Year;

    (l)    5 CoS IDA Academic All-District honors;

    (m)    8 CAA Position Players of the Year;

    (n)    1 CAA Rookie of the Year;

    (o)    CAA Coach of the Year 4 times (2004, 2007, 2008, 2010);

    (p)    Captured a share of 5 straight CAA regular season titles (2007-2011); UD is the first CAA volleyball team to accomplish this since George Mason in 1992-1996;

UD narrowly missed making it 6 straight regular season titles losing in 5 sets to Hofstra in the 2012 CAA title game;

   (q) Competed in NCAA Tournament in 2007, 2008, 2010 and 2011;

   (r) NCAA RPI of 43 in 2009 (highest finish by a CAA team in 4 years);

   (s) Won first round matches in NCAA tournament in 2007 and 2011 (a first in UD volleyball history);

   (t) 1 CAA Conference Player of the Year; and

   (u) 2 CAA Scholar Athlete of the Year.

  12. During Kenny's tenure as UD head volleyball coach, the volleyball team's cumulative grade point average was consistently among the highest of UD athletic teams. In 2011-2012, the UD volleyball team posted the highest cumulative grade point average among all 21 UD athletic teams. Every student athlete who played on the UD volleyball team for 4 years graduated from UD in 4 years, with the exception of a few student athletes who had a redshirt year and therefore graduated in 5 years.

  13. In, 2006, Kenny and associate head coach Cindy Gregory ("Gregory") co-authored a 192 page instructional book entitled "Volleyball: Steps to Success."

  14. In 2004, Kenny was selected President-Elect of the American Volleyball Coaches Association, and held the position as President through the 2006-2007 season.

  15. Kenny has consistently received excellent performance evaluations during her 15-year tenure as the UD head volleyball coach.

### Kenny's Sexual Orientation And Marriage To Gregory

16. On November 30, 2013 Kenny and Gregory were married in accordance with Delaware law (13 *Del. C.* § 129) which permits same-gender marriage. The Defendants had knowledge of the marriage.

### Rawak Is Hired As UD Athletic Director

17. In May 2016, UD hired Rawak as the Athletic Director.

### Complaint From Parent Of A Volleyball Player

18. On October 3, 2016, Kenny received a call from an angry and belligerent parent of a volleyball player claiming that on September 26, 2016 Kenny made his daughter lift weights when she was sick; made her do a drill no one else had to do in practice; and, while his daughter had an injury that needed to get ice after practice, Kenny and Gregory only let certain players get iced after practice. The parent also claimed that Kenny pushed his daughter at Panera on September 24, 2016, and Gregory told his daughter to get an easier major. None of these allegations are true. Moreover, a trainer is present at every practice. The trainer, and the team physician, make determinations as to who may practice. Kenny believes the parent was upset because his daughter was not, in his view, receiving enough playing time.

19. On October 3, 2016, October 4, 2016, and the morning of October 5, 2017, Kenny requested meetings with Rawak, but was told Rawak had no time to see Kenny that week.

### Kenny Summoned To Meeting With Rawak And LaPenta

20. On October 5, 2016 at 1:42 p.m., Kenny received an email directing her to meet with Rawak and LaPenta in Rawak's office at 6:00 p.m. on October 5, 2016.

21. At the October 5, 2016 meeting, Kenny was informed that a complaint had been lodged concerning her treatment of a volleyball player. Kenny was informed that the

5

complainant is the angry parent referred to above in paragraph 17. Rawak told Kenny "I know how hard the last investigation was for you and our hands are tied and we have to investigate."

22. Kenny was not afforded an opportunity to explain the situation or present her side of the story. Kenny was placed on administrative leave pending an investigation and given the option "to go away quietly and make this a peaceful exit as a valued employee that has had great success at UD" by accepting a termination without cause with a year of salary and benefits, or face an investigation of the complaint, and being placed on paid suspension pending the investigation.

23. At 9:51 p.m. on October 5, 2016, Kenny received an email from LaPenta stating he would like to meet with Kenny at 9:00 a.m. on October 6, 2016.

24. At 8:11 a.m. on October 6, 2016, Kenny received a text from LaPenta stating: "Bonnie I would like to meet with you this morning to follow up on our discussion. I'm free now or anytime after 10:30 a.m. Thank you. Tom."

**Kenny Retains Counsel**

25. Kenny retained counsel on October 6, 2017. Kenny's counsel requested a copy of the complaint. UD's Deputy General Counsel ("UD's Counsel"), refused to provide a copy of the complaint which was lodged under UD Policy 4-29.

26. UD Policy 4-29 states that students, faculty, staff and third-party vendors have the right to file a complaint under Policy 4-29, and sets forth the procedure UD will adhere to in conducting an investigation of the allegations concluding with the investigator's written report consisting of findings and the right to appeal the findings.

27. By letter dated October 11, 2016 to UD's Counsel, Kenny's counsel informed UD that: Kenny and Gregory welcomed the investigation UD threatened to conduct in

order to clear their good names, and attempt to rehabilitate their damaged reputations; repeated the request for a copy of the complaint; requested the identity of the investigator; questioned whether the person lodging the complaint had standing to do so under Policy 4-29; asked UD to preserve tapes of practices; and urged UD to expedite the investigation.

28. UD athletics spokesman Scott Selheimer confirmed to the News Journal that Kenny and Gregory were placed on leave, declined to explain the reasons for UD's decision, and refused to say whether it was a disciplinary measure.

29. The report appearing in the News Journal was subsequently repeated by other publications, and widely disseminated nationally.

**UD's Response To The Charge Of Discrimination**

30. UD's March 6, 2017 response to Kenny's charge of discrimination identifies and provides a copy of the complaint which allegedly triggered the October 5, 2016 meeting with Kenny (see Paragraphs 20-22). The complaint is anonymous, and alternates between using the pronouns "I" and "we" to describe the complainant(s).

31. The UD response to Kenny's charge states that, in addition to the complaint referred to in Paragraph 30, the angry parent referred to in Paragraph 17 complained in an email, a copy of which is also attached to the UD response.

32. The UD response claims nondiscriminatory reasons for UD's decision to terminate Kenny and Gregory including three previous losing seasons and the 6-11 record in 2016. This was not a reason presented to Kenny or Gregory when UD attempted to force them to resign under duress.

### UD Terminates Without Cause And In A Manner Which Damaged Kenny's Good Name And Reputation

33. On October 13, 2016 UD terminated Kenny and Gregory without cause, and relieved Kenny and Gregory of all coaching responsibilities and job duties immediately, rather than conducting the investigation UD threatened and promised to conduct in the absence of a resignation, and the investigation Kenny and Gregory welcomed in order to clear their good names and reputations.

34. Placing Kenny and Gregory on leave; relieving them of their coaching responsibilities after they coached 17 matches of the regular season with 15 matches remaining in the regular season, and 6-1/2 weeks prior to the CAA Tournament; and publicly confirming these actions and refusing to say whether it was a disciplinary measure, damaged the good names and reputations of Kenny and Gregory in a manner and to a degree which made it impossible for them to secure comparable employment in the coaching profession.

35. The impact of UD's actions described in Paragraphs 33 and 34 was compounded by an article which appeared in the May 2017 edition of the UD Review, UD's student newspaper, entitled "Psychological Warfare" (the "Article"). This Article was published 6 days after UD's counsel received notice that Kenny and Gregory requested that DDOL issue right to sue notices. Upon information and belief based upon the content of the Article, and the contact information used in preparing the Article, the authors of the Article had access to information in the possession of the UD Athletic Department.

36. All but one of the former players quoted in the Article quit the UD volleyball team; none of the players who quit the volleyball team presented an accurate, complete or fair picture of their respective experiences, or their reasons for quitting the team; and the Article ignores the positive experiences of current and former members of the UD volleyball team. The

8

only player mentioned in the Article who played on the volleyball team for 4 years offered no negative comments.

37. The Article was disseminated in other publications, including D1 Ticker, a Division 1 athletic website widely read by Division 1 athletic directors and coaches.

38. The Article appears to be a post hoc attempt to justify UD's actions in terminating Kenny and Gregory by manufacturing new "evidence" justifying the effort to extract resignation. This new "evidence" was not offered at the time there was an effort to force Kenny and Gregory to resign. The new "evidence" includes allegations which were the subject of a prior investigation in 2012 which concluded there was no basis for the allegations. In 2012, UD's General Counsel, told Kenny that once an investigation is concluded and there was a determination that there was no basis for the allegations, the allegations cannot be used against Kenny in the future.

39. The Article further destroyed the reputations and good names of Kenny and Gregory and made it even less likely they would be able to secure comparable employment.

### Club Volleyball Program And Volleyball Camp

40. Kenny's position as head UD volleyball coach and Gregory's position as associate head UD volleyball coach provided them with a platform, and access to UD facilities, to own and operate a Club Volleyball Program, and a volleyball camp.

41. The termination of Kenny and Gregory in the manner described in Paragraphs 18-39 destroyed the ability of Kenny and Gregory to operate Club Volleyball Program and the volleyball camp thereby resulting in the loss of income generated by Club Volleyball Program and the camp. On October 27, 2016, UD informed Kenny and Gregory that Club Delaware was no longer permitted to practice at UD.

### Kenny's Employment Agreement

42. On October 13, 2016, UD's Counsel provided Kenny notice that her Employment Agreement, which expired on June 30, 2020, was terminated without cause. The notice of termination incorrectly informed Kenny that UD's termination of her Employment Agreement without cause obligated UD to pay Kenny's regular base pay for a period of 1 year after the effective date of termination.

43. When Kenny's counsel pointed out that Kenny's Employment Agreement obligates UD to pay Kenny's regular base pay for a period of 3 years after the effective date of termination without cause, UD conceded it has a 3-year obligation to pay Kenny's regular base pay.

### UD Attempts To Force Kenny To Absorb In 2016 The Full Amount Of The Tax Burden For Payments UD Is Obligated To Make Monthly Over 3 Years

44. On October 21, 2016, UD's Counsel sent Kenny's counsel an email stating that, while Kenny's Employment Agreement states that Kenny's base salary will be paid monthly for 3 years after the effective date of her termination, the full amount of the payments will be reflected on Kenny's 2016 W-2.

45. Kenny's counsel responded by letter dated October 27, 2016 pointing out that forcing Kenny to absorb the full amount of the tax burden in 2016 would deprive Kenny the benefit of her bargain because this approach would result in taxing the payments at a higher rate than would be the case if Kenny paid taxes in each of the next 3 years based on the payments received in each year.

46. By email dated November 9, 2016, UD's Counsel responded to the October 27, 2016 letter by indicating that, while the tax treatment of payments to Kenny was based

on a proposed IRS regulation, UD agreed to "allow" Kenny to be taxed on the payments based upon the year in which payments were received.

47. UD health coverage for Gregory, Kenny's spouse, terminated effective January 31, 2017 with COBRA coverage available to Gregory at Gregory's expense effective February 1, 2017.

48. Upon information and belief, in contrast to the treatment of Kenny's spouse, UD continued to provide benefits, including health coverage for the spouses and dependents of terminated heterosexual, male coaches David Brock and Monte Ross for the period these coaches continue to receive their regular base pay subsequent to the effective date of their respective terminations.

**Other Female Coaches Over The Age Of 40 Forced Out By UD**

49. In the past 15 years, the following female coaches over the age of 40 have been forced out by UD:

| Name | Approximate Age |
| --- | --- |
| Carol Miller – Field Hockey | 50's |
| Bonnie Ferguson – Softball | 50's |
| Sue McGrath-Powell – Track/Cross Country | 50's |
| Denise Wescott – Lacrosse | 40's |
| Tina Martin – Basketball | 53 |

50. Upon information and belief, all of the coaches referred to in Paragraph 49 are gay with the exception of Sue McGrath-Powell.

11

51. Kenny was replaced as head volleyball coach by Sara Matthews who is 38 years of age. The new assistant volleyball coach, Kimberly Lambert, is 41 years of age. The second assistant coach, Keith Anderson, is 28 years of age.

52. All of the head coaches hired by Rawak at UD are heterosexual, married or divorced, and have children.

### COUNT I: FOURTEENTH AMENDMENT/SECTION 1983
### CLAIM FOR PROCEDURAL DUE PROCESS VIOLATION
### (AGAINST UD, RAWAK AND LAPENTA)

53. Kenny repeats the allegations set forth in paragraphs 1-52.

54. Kenny was a UD employee entitled to procedural due process protections provided by the 14th Amendment.

55. Rawak, LaPenta, and UD acted under color of law in threatening the initiation of an investigation in an attempt to force a resignation under duress; and terminated Kenny without cause and without providing Kenny a copy of the complaint allegedly triggering the threat to initiate an investigation, and without providing Kenny an opportunity to be heard when Kenny requested a prompt investigation.

56. At all times material hereto, Rawak and LaPenta were UD's policy makers with respect to suspension and termination within the UD Athletic Department. As a result, the decisions of Rawak and LaPenta relating to the suspension and termination of Kenny are imputed to UD.

57. The actions described in paragraph 51 irreparably damaged Kenny's reputation by relieving Kenny of her head coaching responsibilities with 15 matches remaining in the regular season, and 6-1/2 weeks prior to the CAA Tournament.

58. UD further damaged Kenny's reputation by publicly confirming Kenny was relieved of her coaching responsibilities and refusing to say whether it was a disciplinary action; and subsequently provided information used to prepare the Article which destroyed Kenny's reputation in a post hoc effort to justify the attempt of UD, Rawak and LaPenta to extract a resignation from Kenny and terminate Kenny.

59. By damaging Kenny's reputation, honor and integrity, UD, Rawak and LaPenta deprived Kenny of her liberty interest without due process.

60. By depriving Kenny of her right to procedural due process, UD, Rawak and LaPenta have dramatically decreased Kenny's opportunities to secure comparable employment, and destroyed Kenny's ability to operate the Club Volleyball Program and the volleyball camp, causing both economic and non-economic damages.

### COUNT II: FOURTEENTH AMENDMENT/SECTION 1983 CLAIM FOR PROCEDURAL DUE PROCESS VIOLATION (AGAINST UD, RAWAK, AND LAPENTA)

61. Kenny repeats the allegations set forth in paragraphs 1-60.

62. UD Policy 4-29 created a reasonable expectation on the part of Kenny that she would receive procedural due process (notice of the charges and an opportunity to be heard by an impartial decision maker) in the event a complaint was filed alleging that Kenny violated Policy 4-29.

63. Rawak, LaPenta and UD acted under color of law by threatening the initiation of an investigation in an attempt to force a resignation under duress; then terminating Kenny without cause and without providing Kenny a copy of the complaint allegedly triggering the threat to investigate, and without providing Kenny an opportunity to be heard as provided in UD Policy 4-29 when Kenny requested an investigation.

64. At all times material hereto, Rawak and LaPenta were UD's policy makers with respect to suspension and termination within the UD Athletic Department. As a result, the decisions of Rawak and LaPenta relating to the suspension and termination of Kenny are imputed to UD.

65. The actions described in paragraph 63 irreparably damaged Kenny's reputation by relieving Kenny of her head coaching responsibilities with 15 matches remaining the regular season, and 6-1/2 weeks prior to the CAA Tournament.

66. UD further damaged Kenny's reputation by publicly confirming Kenny was relieved of her coaching responsibilities and refusing to say whether it was a disciplinary action; and subsequently provided information used to prepare the Article which destroyed Kenny's reputation in a post hoc effort to justify UD's and Rawak's effort to extract a resignation and terminate Kenny.

67. By depriving Kenny of her right to procedural due process, UD, Rawak, and LaPenta have dramatically decreased Kenny's opportunities to secure comparable employment, and destroyed Kenny's ability to operate the Club Volleyball Program and the volleyball camp, causing both economic and non-economic damages.

## COUNT III: AGE DISCRIMINATION

68. Kenny repeats the allegations of paragraphs 1-67.

69. Kenny was eminently qualified to be the head UD volleyball coach, and was a highly successful coach at UD measured by the athletic, competitive success of the UD volleyball team, and the academic performance of the members of the volleyball team.

70. UD has a pattern of forcing out female coaches over the age of 40.

71. Kenny was replaced as head volleyball coach by Sara Matthews who is 38 years of age. Gregory was replaced by the new assistant volleyball coach, Kimberly Lambert, who is 41 years of age. The second assistant coach, Keith Anderson, is 28 years of age.

72. All of the women head coaches hired by Rawak at UD are under the age of 40 with the exception of the basketball coach who is 45 years of age.

73. By the conduct described in this Complaint, UD intentionally violated the rights of Kenny under the Age Discrimination in Employment Act of 1967 ("ADEA"), and 19 *Del. C.* § 711(a).

74. Any legitimate non-discriminatory reason offered by UD for its actions is pretext for intentional discrimination based on age.

75. As a result of UD's intentional violation of the rights of Kenny under the ADEA and 19 *Del. C.* § 711(a), she will suffer loss of wages, loss of income from the Club Volleyball Program and the volleyball camp, loss of benefits, emotional distress, mental anguish, loss of reputation, loss of enjoyment of life, and incurred attorneys' fees, thereby entitling her to an award of compensatory damages.

76. The damages suffered by Kenny are a direct and proximate result of UD's actions.

**COUNT IV: SEXUAL ORIENTATION DISCRIMINATION**

77. Kenny repeats the allegations of paragraph 1-76.

78. Kenny was eminently qualified to be the head UD volleyball coach, and was a highly successful coach at UD measured by the athletic, competitive success of the UD volleyball team, and the academic performance of the members of the Volleyball team.

79. By the conduct described in this Complaint, UD intentionally violated the rights of Kenny under 19 *Del. C.* § 711(a) which prohibits discrimination on the basis of sexual orientation.

80. Any legitimate non-discriminatory reason offered by UD for its actions is pretext for intentional discrimination based on sexual orientation.

81. As a result of UD's intentional violation of Kenny's rights under 19 *Del. C.* § 711(a), she will suffer loss of wages, loss of income from the Club Volleyball Program and the volleyball camp, loss of benefits, emotional distress, mental anguish, loss of reputation, loss of enjoyment of life, and incurred attorneys' fees, thereby entitling her to an award of compensatory damages.

82. The damages suffered by Kenny are a direct and proximate result of UD's actions.

## COUNT V: MARITAL STATUS DISCRIMINATION

83. Kenny repeats the allegations of paragraphs 1-82.

84. Kenny was eminently qualified to be the head UD volleyball coach, and was a highly successful coach at UD measured by the athletic, competitive success of the UD volleyball team, and the academic performance of the members of the volleyball team.

85. By the conduct described in this Complaint, UD intentionally violated the rights of Kenny under 19 *Del. C.* § 711(a) which prohibits discrimination on the basis of marital status. More specifically, Kenny was the victim of discrimination because she exercised her right under Delaware law to marry a person of the same gender.

86. Any legitimate non-discriminatory reason offered by UD for its actions is pretext for intentional discrimination based on marital status.

87. As a result of UD's intentional violation of Kenny's rights under 19 *Del. C.* § 711(a), she will suffer loss of wages, loss of income from the Club Volleyball Program and the volleyball camp, loss of benefits, emotional distress, mental anguish, loss of reputation, loss of enjoyment of life, and incurred attorneys' fees, thereby entitling her to an award of compensatory damages.

88. The damages suffered by Kenny are a direct and proximate result of UD's actions.

### COUNT VI: FOURTEENTH AMENDMENT/SECTION 1983 CLAIM FOR EQUAL PROTECTION VIOLATION (AGAINST UD, RAWAK AND LAPENTA)

89. Kenny repeats the allegations set forth in paragraphs 1-88.

90. Kenny was a UD employee entitled to equal protection of the laws provided by the 14th Amendment.

91. Rawak, LaPenta, and UD acted under color of law in threatening the initiation of an investigation in an attempt to force a resignation under duress; and terminated Kenny because of her sexual orientation and the fact Kenny exercised her right under Delaware law to marry a person of the same gender.

92. At all times material hereto, Rawak and LaPenta were UD's policy makers with respect to suspension and termination within the UD Athletic Department. As a result, the decisions of Rawak and LaPenta relating to the suspension and termination of Kenny are imputed to UD.

93. By depriving Kenny of her right to equal protection of the laws, UD, Rawak and LaPenta have dramatically decreased Kenny's opportunities to secure comparable

employment, and destroyed Kenny's ability to operate the Club Volleyball program and the volleyball camp, causing both economic and non-economic damages.

## RELIEF

WHEREFORE, Kenny prays that the Court enter judgment against Defendants as follows:

A. Declaring that Defendants violated Kenny's right to nondiscriminatory treatment, procedural due process, and right to equal protection of the laws under the Fourteenth Amendment, 42 U.S.C. § 1983, and 19 *Del. C.* § 711(a).

B. Declaring that UD violated Kenny's rights to non-discriminatory treatment under 29 U.S.C. §§ 621 *et seq.*

C. Awarding Kenny damages from Defendants including lost wages, back pay, front pay, compensatory damages including for pension and other benefits, pain and suffering, impairment of reputation, inconvenience, and non-pecuniary losses, in an amount to be proven at trial, and pre- and post-judgment interest;

D. Awarding Kenny punitive damages from Rawak and LaPenta (Counts I, II, and VI);

E. Awarding Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988; 29 U.S.C. § 626; and 19 *Del. C.* § 715, and any other applicable authority; and

F. Providing for such other and further relief as the Court deems appropriate and just.

                MORRIS JAMES LLP

                /s/ David H. Williams
                David H. Williams (Bar ID #616)
                James H. McMackin, III (Bar ID #4284)
                Allyson B. DiRocco (Bar ID #4830)
                500 Delaware Avenue, Suite 1500
                P.O. Box 2306
                Wilmington, DE  19899-2306
                302-888-6800
                *dwilliams@morrisjames.com*
                *jmcmackin@morrisjames.com*
                *adirocco@morrisjames.com*
                Attorneys for Plaintiff

Dated:  August 17, 2017

9425270/1