IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BONNIE J. KENNY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:17-cv-01156-RGA |
| | ) |
| UNIVERSITY OF DELAWARE, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM**

Plaintiff filed this action against Defendants claiming violations of the Due Process Clause of the Fourteenth Amendment (Counts I and II), the Age Discrimination in Employment Act ("ADEA") pursuant to 29 U.S.C. § 623 (Count III), the Delaware Discrimination in Employment Act pursuant to 19 *Del. C.* § 711(a) (Counts III, IV, and V), and the Equal Protection Clause of the Fourteenth Amendment (Count VI). (D.I. 1 at ¶ 1). Presently before the Court is Defendant's Motion to Dismiss all counts of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 6). The issues have been fully briefed. (D.I. 7, 9, 11). For the reasons set forth below, Defendants' Motion is GRANTED as to Counts I and II and DENIED as to Counts III, IV, V, and VI.

**I.    BACKGROUND**

This dispute arises out of Plaintiff Bonnie J. Kenny's termination of employment from the University of Delaware ("UD") in October 2016 at which time she was 54 years old. (D.I. 1 at ¶¶ 1, 4). Kenny began her employment as the head coach of the women's volleyball team at

1

UD in February 2002. (*Id.* at ¶ 10). The Complaint describes Kenny's tenure at UD as "successful" and lists the many accomplishments of the volleyball team with her leadership. (*Id.* at ¶ 11, 12). Additionally, the Complaint states Kenny consistently received excellent performance evaluations during her time at UD. (*Id.* at ¶ 15). In November of 2013, Kenny married the assistant women's volleyball coach, Ms. Cindy Gregory. (*Id.* at ¶ 16). The Complaint alleges that all Defendants knew of the marriage. (*Id.*)

On October 3, 2016, UD and Kenny received a complaint from a parent alleging Kenny mistreated a player. (*Id.* at ¶ 18). Two days later, Kenny met with Defendants Chrissi Rawak, UD Athletic Director, and Thomas LaPenta, UD Human Resources Director, to discuss the complaint. (*Id.* at ¶¶ 20-21). At that meeting, Rawak and LaPenta stated they must investigate the complaint while placing Kenny on paid suspension, but also offered Kenny the option of resigning with one year's salary and benefits. (*Id.* at ¶¶ 21-22). On October 11, 2016, Kenny informed UD that she wished to go forward with the investigation. (*Id.* at ¶ 27). A UD athletics spokesperson confirmed to the News Journal that Kenny was placed on leave and refused any other comment. (*Id.* at ¶ 28).

UD terminated Kenny without cause, as permitted by her employment contract, on October 13, 2016. (*Id.* at ¶ 33). UD did not conduct an investigation into the complaint filed ten days earlier, despite UD Policy 4-29 setting forth the procedure UD would adhere to when investigating a complaint. (*Id.* at ¶¶ 26, 33). UD claimed its decision to terminate Kenny was due to three previous losing seasons, although UD did not make public statements regarding Kenny's termination. (*Id.* at ¶¶ 32, 34). Approximately seven months later, an article appeared in the UD student newspaper with opinions from former UD women's volleyball players. (*Id.* at ¶ 35). These opinions provided a mostly negative picture of Kenny and her coaching. (*Id.* at ¶ 36).

2

Kenny's termination occurred in the middle of the regular volleyball season which, she asserts, damaged her reputation. (*Id.* at ¶¶ 33-34). Kenny also alleges that UD's silence to the press and the student newspaper article damaged her reputation further. (*Id.* at ¶ 39). Thus, Kenny asserts she was entitled to the investigation described in UD Policy 4-29, as well as a name-clearing hearing to protect her damaged reputation. (*Id.* at ¶¶ 33, 62).

Kenny alleges that her termination was motivated by discrimination based on her age, sexual orientation, and marital status. (*Id.* at ¶¶ 73, 79, 85). After UD terminated Kenny's employment, it replaced her with a 38 year old head coach. (*Id.* at ¶ 51). Over Kenny's tenure, UD terminated five other female coaches over the age of 40. (*Id.* at ¶ 49). Additionally, four of those five coaches were homosexual. (*Id.* at ¶ 50). Since Defendant Rawak's appointment as UD Athletic Director in May 2016, she has only hired coaches who are heterosexual, are married or divorced, and have children. (*Id.* at ¶ 52). Additionally, after Kenny's termination, her employment agreement required UD to pay her base salary for three years. (*Id.* at ¶ 43). Her spouse, Ms. Gregory, also received UD health coverage. In January 2017, however, UD terminated Ms. Gregory's health coverage. (*Id.* at ¶ 47). UD continued to provide health coverage to the spouses of two heterosexual male coaches during the time they received their regular base pay after their terminations. (*Id.* at ¶ 48).

In March 2017, Kenny filed charges of discrimination with the Delaware Department of Labor (the "DDOL") and the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* at ¶ 30). In June 2017, the DDOL and EEOC issued Kenny Right to Sue Notices. (D.I. 1-1 at 2, 5).

## II.   LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows

3

the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

#### A. Violation of the Due Process Clause (Count I)

Defendants' Motion to Dismiss Count I of the Complaint is granted because Kenny failed to allege a cognizable liberty interest. To state a claim pursuant to § 1983 for deprivation of

4

procedural due process rights, a plaintiff must allege that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to her did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). A public employee who is "defamed in the course of being terminated" may have a liberty interest in her reputation even if she lacks a cognizable property interest in the job she lost. *Id.* at 238.

To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to her reputation plus deprivation of some additional right or interest. *Id.* at 236. This test has become known as the "stigma-plus" test. Stigma-plus occurs when an employer "creates and disseminates a false and defamatory impression about the employee in connection with her termination." *Id.* To satisfy the stigma prong of the test, a plaintiff must allege that the purportedly stigmatizing statements (1) were made publicly, and (2) were false. *Golovan v. Univ. of Del.*, 73 F. Supp. 3d 442, 451 (D. Del. 2014).

In this case, Kenny's employment agreement permitted UD to terminate her without cause. (D.I. 7-1 at 7). Thus, as a matter of law, she had no property interest in her position as head coach of the UD women's volleyball team. Nonetheless, Kenny was terminated by UD on October 13, 2016. (D.I. 1 at ¶ 33). Despite her lack of a property interest, because Kenny asserted a deprivation of a liberty interest in her Complaint, her termination is sufficient to satisfy the "plus" prong of the stigma-plus test. (D.I. 1 at ¶ 59).

To satisfy the "stigma" prong of the stigma-plus test, Kenny points to the UD athletic spokesperson's refusal to make a statement regarding her termination. (*Id.* at ¶ 58; D.I. 9 at 8-9). According to the Complaint, the UD spokesperson "confirmed" that she was placed on leave. (D.I. 1 at ¶ 28). Moreover, the Complaint states UD and the spokesperson refused to say whether

5

the leave was a disciplinary measure. (*Id.*). Based on these factual allegations alone, Kenny fails to state that the UD spokesperson made public statements or that any statements made were false. To the contrary, the Complaint states the spokesperson "confirmed" she was placed on leave—which seems to concede the statement was not false. (*Id.*). Moreover, Kenny has failed to produce any authority suggesting a defendant's *refusal* to make a public statement is sufficient to create a "defamatory impression" about her termination.

Kenny has also pointed to the UD student newspaper article portraying negative views of her from former players as damaging her reputation under the stigma-plus test. (*Id.* at ¶¶ 35, 38). The Complaint fails to allege the Defendants actually authored, published, or disseminated the article. Moreover, Kenny has failed to show the article was made in connection with her termination. *Golovan*, 73 F. Supp. 3d at 452 (requiring alleged defamatory statements to be made in connection to employee's termination). Rather, the Complaint states the article was published nearly seven months after Kenny's termination. (*Id.* at ¶ 35). Although Kenny alleges the damage to her reputation has interfered with her ability to obtain comparable employment in the coaching profession, this fact is insufficient to establish stigma, especially where Kenny has failed to allege that any of Defendants' statements were disseminated publicly and were false. *Id.* at 451 (finding inability to obtain subsequent employment after termination is not evidence of stigma). Thus, Kenny has failed to allege the "stigma" prong of the stigma-plus test and has failed to establish a claim for deprivation of a liberty interest. Accordingly, the Court will grant Defendants' Motion to Dismiss for Count I.

### B. Violation of Due Process Clause (Count II)

Defendants' Motion to Dismiss Count II of the Complaint is granted because, much like Count I, Kenny failed to allege a cognizable property or liberty interest. On the face of the

Complaint, Count I and Count II are substantially similar in their allegations except for Count II's ¶ 62, which states that UD Policy 4-29 created a reasonable expectation that Kenny would receive procedural due process in the event a complaint was filed against her. (*Id.* at ¶ 62). Despite the additional allegation relating to UD Policy 4-29, the Complaint has still failed to state a claim for deprivation of due process, essentially for the same reasons that Count I fails.

To have a property interest in continued employment, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In this case, the employment agreement permitted UD to terminate Kenny's employment with or without cause. (D.I. 7-1 at 7). Thus, Kenny's employment was at-will. The statement in the employment agreement is sufficient to prevent any provision in the UD Policy from modifying Kenny's status as an at-will employee.

Kenny argues that UD Policy 4-29 created a reasonable expectation that UD would conduct an investigation of the complaint before terminating her. (D.I. 1 at ¶ 62). However, policies that are merely procedural, and not substantive, do not generate a cognizable property interest. *Blanding v. Pennsylvania State Police*, 12 F.3d 1303, 1306 n.2 (3d Cir. 1993). The Complaint states UD Policy 4-29 "sets forth the procedure UD will adhere to in conducting an investigation." (*Id.* at ¶ 26). This policy did not bind UD to conducting an investigation—but only described the procedures *if* UD chose to investigate. Kenny was not entitled to an investigation into the complaint when her employment agreement permitted her termination without cause. Thus, without any other substantive differences from Count I, Kenny has failed to establish a claim for deprivation of a property or liberty interest without due process of law. Accordingly, the Court will grant Defendants' Motion to Dismiss for Count II.

### C. Violation of the ADEA and DDEA (Count III)

Defendants' Motion to Dismiss Count III of the Complaint is denied because Kenny has sufficiently established a prima facie case of age discrimination. To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show: (1) she is over forty; (2) she is qualified for the position in question; (3) she suffered from an adverse employment action; and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Moore v. Staples*, 635 F. Supp. 2d 337, 341 (D. Del. 2009) (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). The requirements under the ADEA and the DDEA are the same. Thus, if Kenny's Complaint is sufficient under the ADEA, it will likely be sufficient under the DDEA. *Alred v. Eli Lilly & Co.*, 771 F. Supp. 2d 356, 366 (D. Del. 2011) ("Generally, the same evidence required to prevail on a claim under the ADEA is required to prevail on a claim of age discrimination brought under the DDEA."). Kenny asserts she has alleged facts that satisfy all four elements of the prima facie case.

First, the Complaint states that Kenny was 54 years old at the time UD terminated her employment. (D.I. 1 at ¶ 10, 33). Thus, she is within the class protected under the ADEA. Next, the Complaint describes Kenny's tenure as the UD head women's volleyball coach. (*Id.* at ¶ 11). This description has a list of the team's successes since Kenny took over as head coach, including team wins and individual player and academic awards. (*Id.* at ¶ 11, 12, 13). The Complaint also states that Kenny was employed as the UD head coach for over 14 years. (*Id.* at ¶ 10). These facts, taken as true, lead to the plausible inference that Kenny was qualified for her position as the UD women's volleyball head coach. The Complaint next states that UD terminated Kenny without cause, and relieved her of all coaching responsibilities and job duties immediately. (*Id.* at ¶ 33). These facts sufficiently show Kenny suffered an adverse employment

action. Finally, the Complaint states Kenny's replacement as head volleyball coach was 38 years old. (*Id.* at ¶ 51).

In addition to the factual allegation that Kenny was replaced by someone younger, the Complaint provides other factual allegations that lead to the inference of age discrimination. The Complaint provided a list of female coaches over the age of 40 all of whom had been "forced out" by UD. (*Id.* at ¶ 49). Moreover, the Complaint states that all of the women head coaches hired by Rawak were under the age of 40 with one exception. (*Id.* at ¶ 72). Based on all of these factual allegations, there is a reasonable inference of age discrimination.

UD argues Kenny failed to state a claim, because the ADEA requires a showing of "but-for" causation. Although the Supreme Court established the "but-for" causation standard in *Gross*, that standard applies to Kenny's ultimate burden of persuasion and does not apply here at the pleading stage. *Gross*, 557 U.S. at 177 ("A plaintiff must prove by a preponderance of the evidence, that age was the 'but-for' cause of the challenged employer decision."). At this stage of the litigation, the focus is on whether Kenny has pleaded facts, taken as true, to show she suffered from age discrimination. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). At the pleading stage, "a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* Thus, Kenny has pled beyond what is required to survive the motion to dismiss. Defendants' arguments in support of their motion to dismiss are more appropriate for a motion for summary judgment after the parties have engaged in discovery. Accordingly, the Court will deny Defendants' Motion to Dismiss Kenny's ADEA claim under Count III.

### D. Violation of DDEA - Sexual Orientation and Marital Status (Counts IV and V)

Defendants' Motion to Dismiss Counts IV and V of the Complaint is denied because Kenny's allegations sufficiently state a claim of discrimination on the basis of sexual orientation and marital status. The DDEA prevents discrimination by an employer on the basis of sexual orientation and marital status. *See* 19 *Del. C.* § 711(a). To state a claim under the DDEA, a plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) similarly situated persons who were not members of her protected class were treated more favorably or there are other circumstances that give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). The plaintiff is not required to persuade the court at the motion to dismiss stage, but must submit more than naked assertions. *Blades v. Mosaic of Del.*, 2017 WL 3868238 at *6, (D. Del. Aug. 31, 2017). Defendants seek dismissal of the DDEA claims on the grounds that the claims do not meet the required pleading standards and are pled without supporting facts. (D.I. 7 at 20-21).

The Complaint alleges that Kenny is a member of a protected class because of her sexual orientation and marital status. (D.I. 1 at ¶ 16). Specifically, the Complaint states that she is in a same-gender marriage with Cindy Gregory under Delaware law and that the Defendants knew of her marriage. (*Id.*). This factual allegation supports Kenny's membership in a protected class. As with Count III, the Complaint provides sufficient allegations to support Kenny's qualifications for her position as the head coach for the UD women's volleyball team and that she suffered an adverse employment action when UD terminated her. Further, the Complaint provided a list of four female homosexual coaches who all had been "forced out" by UD. (*Id.* at ¶ 49).

Defendants challenge the plausibility of these factual allegations to satisfy *Iqbal* and *Twombly*. However, I find the factual allegations sufficient to support an inference that UD terminated Kenny because of her sexual orientation and marital status. The Complaint alleges UD terminated several women similar to Kenny. Thus, Kenny's pleading sufficiently states a claim of discrimination based on sexual orientation and marital status. Therefore, the Court will deny Defendants' Motion to Dismiss Kenny's DDEA claims under Counts IV and V.

### E. Violation of Equal Protection Clause (Count VI)

Defendants' Motion to Dismiss Count VI of the Complaint is denied because Kenny's allegations sufficiently allege a discrimination and Equal Protection Claim. Under § 1983, to state an Equal Protection Claim, Kenny must allege the existence of purposeful or intentional discrimination. *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). Kenny must show that she received different treatment from others similarly situated. *Andrews*, 895 F.2d at 1478. In this case, Kenny must allege the different treatment was based on her sexual orientation or marital status.[1] *Id.*

Defendants' only argument in support of dismissing this claim is the plausibility of the allegation of intentional discrimination. (D.I. 7 at 16). Specifically, Defendants state that Kenny's Complaint fails to allege any facts that would give rise to an inference of intentional discrimination. *Id.* However, much like Kenny's discrimination claims, she has sufficiently pled

---

[1] Defendants also made an argument stating Kenny's Equal Protection claim was based on the "Class of One" theory and thus could not stand. However, in response, Kenny stated the Equal Protection claim was based solely on the Defendants' alleged discrimination based on her sexual orientation and/or marital status. (D.I. 7 at 16; D.I. 9 at 16-17).

11

facts that allege she was discriminated against on the basis of her sexual orientation and marital status.

The factual allegations suggest UD had terminated women similar to Kenny in sexual orientation. (D.I. 1 at ¶ 49). Kenny alleged that after her termination, her spouse's medical coverage was terminated prematurely. (*Id.* at ¶ 47). Kenny also alleged similarly situated persons—married heterosexual male coaches who were terminated with a similar employment agreement—were provided with continued health benefits for their spouses and dependents during those coaches' entire severance period. (*Id.* at ¶ 48). Thus, the factual allegations show at least two instances where UD treated similarly situated heterosexual male coaches more favorably than Kenny. (*Id.* at ¶ 48).

Although Defendants raise the argument that Kenny also alleged that at least three coaches terminated by UD were heterosexual, I do not find these allegations take away from the plausibility of her other allegations regarding discrimination. (D.I. 11 at 11-12). Thus, because Kenny's factual allegations create a plausible inference that she suffered from discrimination on the basis of her sexual orientation and marital status, the Court will deny Defendants' Motion to Dismiss Count VI.

### F. Rawak and LaPenta as Individual Defendants in Count VI

Kenny has alleged sufficient facts to hold Defendants Rawak and LaPenta personally liable for depriving Kenny of Equal Protection of the laws. Pursuant to § 1983, Kenny must allege facts that show Rawak and LaPenta had personal involvement with the deprivation of her rights. *Smith v. Carroll*, 602 F.Supp.2d 521, 525 (D. Del. 2009). Kenny must show that: (1) Rawak and LaPenta personally participated in the activity; (2) they directed others to violate her

rights; or (3) they were supervising officials who had knowledge of and acquiesced in another's violations. *Id.*

Defendants' primary argument on this issue is the failure of Kenny to allege a deprivation of a constitutional right. (D.I. 7 at 17). However, I will not dismiss Kenny's Equal Protection claim, as she has asserted a deprivation of a federal right. She has also alleged Rawak and LaPenta personally participated in her termination, which deprived her of that federal right. The Complaint states that all Defendants knew of her sexual orientation and marriage to Cindy Gregory. (D.I. 1 at ¶ 16). The Complaint also states Rawak and LaPenta met with Kenny after receiving the complaint from a parent. (*Id.* at ¶¶ 20-21). At that time, Rawak stated she "had to investigate" and gave Kenny an option to resign without proceeding with the investigation. (*Id.* at 21). Subsequently, despite Kenny's request for an investigation, Kenny was terminated by UD without conducting the investigation. (*Id.* at ¶ 33). At the time of Kenny's termination, both Rawak and LaPenta were "UD's policy makers with respect to suspension and termination within the UD Athletic Department." (*Id.* at ¶ 92).

Kenny also alleges Rawak, since her appointment as UD Athletic Director, only hired heterosexual individuals, married or divorced, with children. (*Id.* at ¶ 52). This allegation leads to the inference of unequal treatment, but also constitutes an allegation that Rawak personally participated in this unequal treatment. Kenny also provided a list of female, homosexual coaches UD terminated over the last 15 years. (*Id.* at ¶ 49). Although the Complaint does not state how long LaPenta has occupied the role of UD Human Resources Director, the Complaint does state that at all relevant times, LaPenta was a policy maker with regard to terminations within the UD Athletic Department. (*Id.* at ¶ 92). These facts, taken as true, support the inference that Rawak

13

and LaPenta personally participated in depriving Kenny of Equal Protection of the laws when she was terminated.

Defendants also argue Rawak and LaPenta are entitled to qualified immunity. Qualified immunity is a defense available to a state official. Thus, the burden of pleading rests on Defendants. *Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006). This defense prevents a suit against a government official unless the official's acts violated a constitutional right and that right was clearly established at the time of the violation. *Jackson v. Russell*, 189 F. Supp. 3d 405, 410 (D. Del. 2016). Defendants' argument rests on the premise that Kenny has failed to articulate a deprivation of a constitutional right. (D.I. 7 at 18; D.I. 11 at 13). But I have rejected that argument in respect to the Equal Protection claim. In addition, Defendants fail to address whether Kenny's alleged constitutional right was clearly established. Defendants state Rawak and LaPenta are entitled to qualified immunity "if [they] reached a reasonable, but mistaken, conclusion that the law's requirements were met." (*Id.* at 18-19). Defendants merely state this rule should apply to this case. They fail, however, to state why, relying only on "unspecific allegations of denial of Due Process and Equal Protection." (*Id.* at 19). Thus, because Defendants fail to address the entire qualified immunity inquiry and the burden is solely on them at the pleading stage, Rawak and LaPenta are not entitled to have Count VI dismissed on the basis of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Count I and Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. Defendants' Motion to Dismiss Counts III, IV, V, and VI is DENIED. Plaintiff has not requested leave to amend. It does not

appear that Plaintiff could amend her Complaint to state the claims she has asserted in Counts I and II. Thus, leave to amend is not granted.

An appropriate order will be entered.