IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BONNIE J. KENNY and

CINDY GREGORY,

            Plaintiffs,

v.

UNIVERSITY OF DELAWARE, *et al.*,

            Defendants.

Civil Action No. 1:17-cv-01156-RGA

## MEMORANDUM OPINION

David H. Williams, James H. McMackin, III, Allyson Britton DiRocco, MORRIS JAMES, LLP, Wilmington, DE;

    Attorneys for Plaintiff

James D. Taylor, Jr., SAUL EWING ARNSTEIN & LEHR, LLP, Wilmington, DE; Christina D. Riggs, SAUL EWING ARNSTEIN & LEHR, LLP, Philadelphia, PA;

    Attorneys for Defendant

November ___, 2019


**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiffs Bonnie J. Kenny and Cindy Gregory sued Defendants the University of Delaware ("UD"), Chrissi Rawak, and Thomas LaPenta on August 17, 2017. (D.I. 1; Civ Act. No. 17-cv-01157-RGA, D.I. 1). Plaintiffs, a married lesbian couple in their fifties, allege they were fired from their coaching positions because of their age and sexual orientation. (D.I. 1). Their lawsuits were consolidated on April 13, 2018. (D.I. 20). Currently before the Court is Defendants' Motion for Summary Judgment. (D.I. 70). The matter has been fully briefed. (D.I. 71, 72, 78). Because Plaintiffs have failed to show Defendants' stated reasons for firing them were pretext for discrimination, Defendants' motion is GRANTED.

## I. BACKGROUND

Kenny was the head coach of UD's women's volleyball team, and Gregory was the team's associate head coach. (D.I. 82 at 2). On October 13, 2016, in the middle of the volleyball season, the university fired both coaches. (D.I. 82 at 3). Plaintiffs allege (1) age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA") and the Delaware Discrimination in Employment Act ("DDEA"); and (2) sexual orientation discrimination, in violation of the DDEA and the Equal Protection Clause of the Fourteenth Amendment. (D.I. 1 at 14-17). Plaintiffs had initially alleged marital status discrimination, but they now acknowledge that claim is subsumed within their sexual orientation claim. (D.I. 72 at 19).

UD hired Kenny and Gregory in 2002. (D.I. 82 at 2). By that time, they were both experienced coaches, following stints at other major universities. (*Id.*). Kenny and Gregory had begun dating each other in 1996, while working at a different university, and they married under Delaware's same-sex marriage law in 2013. (D.I. 71, Ex. 3, hereinafter, "Kenny Dep.," at 21,

1

27). While they didn't publicize their relationship, they assumed many people knew. (*Id.* at 28, 38-39).

The coaches indisputably had success at UD, leading the team to Colonial Athletic Association Championships in 2007, 2008, 2010, and 2011, and to four berths in the National Collegiate Athletic Association tournament. (D.I. 69, Ex. E). But the team's performance began slipping in 2013. The Blue Hens posted losing records in 2013, 2014, and 2015. (*Id.*). Throughout this period though, the student athletes consistently performed well academically. (D.I. 71, Ex. 7, hereinafter, "Rawak Dep.," at 88-89).

In May 2016, UD hired Chrissi Rawak as athletic director. (D.I. 82 at 2). Two months later, Rawak met for the first time with Kenny, who informed Rawak of an anonymous complaint filed by a volleyball player in 2014. (Rawak Dep. at 12-13). According to that complaint, Gregory had hugged and kissed players, and the players were uncomfortable approaching either Gregory or Kenny about the issue. (D.I. 73 at 409-411). Following an investigation, Eric Ziady, UD's athletic director at the time, barred Gregory from one-on-one meetings with student athletes for one year and instructed her to refrain from any physical contact with athletes. (D.I. 71, Ex. 9). Gregory and Kenny deny the allegations. (D.I. 71, Ex. 4, hereinafter, "Gregory Dep.," at 12). In the meeting with Rawak, Kenny said the 2014 investigation had been difficult and was not something she wanted to go through again. (Rawak Dep. at 13).

In September 2016, Rawak attended three volleyball games in person and watched others online. (*Id.* at 25-26). She also briefly attended two volleyball practices. (*Id.*). She observed Kenny "yelling" at players in a "very aggressive tone," and she described Gregory as similarly

"intense." (*Id.* at 172-174). Rawak claims the athletes "cowered" during the games and that they looked "distraught, defeated, uncomfortable, devalued."[1] (*Id.* at 181).

Rawak then received two separate complaints about the coaches. The first, dated September 28, 2016, was an anonymous letter claiming that Kenny bullied players. (D.I. 71, Ex. 12.). A few days later, a player's parents emailed Rawak to complain that one or both coaches had forced their daughter to lift weights while sick and had yelled at her for studying before a game. (D.I. 71, Ex. 13). The parents also claimed Kenny had shoved their daughter and that Gregory used weekly one-on-one meetings to "belittle, berate and to demean" her. (*Id.*). Plaintiffs dispute the allegations, and suggest the player was upset about getting less playing time. (D.I. 72 at 3).

On October 5, 2016, Rawak met separately with both coaches. (D.I. 82 at 3). Thomas LaPenta, UD's director of human resources, attended both meetings. (*Id.*). At the meetings, Rawak and LaPenta informed the coaches there were allegations of misconduct and that they could either resign or face a university investigation. (Kenny Dep. at 159-163, 229). Both coaches declined to resign, and they retained counsel the following day. (D.I. 82 at 3). The university placed the coaches on leave. (Rawak Dep. at 18).

Rawak then examined athlete responses to a university survey from the previous season. She found the results "incredibly alarming." (Rawak Dep. at 179). Ten out of thirteen volleyball players said they were "sometimes" or "often" subjected to coaching techniques that involved

---

[1] Plaintiffs submitted videos of the games Rawak said she attended, as well as videos of three practices. (D.I. 76). Neither side has identified which portions of the videos might be relevant. I watched part of one game, but because of the camera angle and distance, I did not observe anything of significance.

3

verbal abuse. (D.I. 71, Ex. 16). Eleven out of thirteen said the coaching techniques "sometimes" or "often" involved mental abuse. (*Id.*).

After reviewing those surveys, Rawak decided not to investigate the complaints. (*Id.* at 137). Instead, on October 13, 2016, she fired both coaches "without cause."[2] (D.I. 82 at 3). In an October 16 press release, the university publicly announced the departure of the volleyball coaches, along with the head coach of the football team. (D.I. 71, Ex. 17). At that point in the season, the volleyball team had six wins and eleven losses. (D.I. 71 at 7).

At the time of their terminations, Kenny was 55 years old and Gregory was 56. (D.I. 82 at 3-4). To replace Kenny as head coach, Rawak hired Sara Matthews, who was 38 when she was hired. (*Id.* at 4). Two assistant coaches replaced Gregory: Kimberly Lambert, who was 39 when she was hired, and Keith Anderson, who was about 28. (*Id.*).

## II. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the

---

[2] Kenny's employment contract entitled her to three years of severance pay because the university fired her without cause. (Kenny Dep. at 195). Gregory, who had no employment contract (Gregory Dep. at 7), received three months pay under university policy. (D.I. 71, Ex. 2).

4

moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. Employment Discrimination

In employment discrimination cases without direct evidence of discrimination, courts use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This test, which was originally used to analyze racial discrimination claims under Title VII of the Civil Rights Act, also governs age discrimination claims under the ADEA, *Smith v. City of*

*Allentown*, 589 F.3d 684, 691 (3d Cir. 2009), and all discrimination claims under the state DDEA, *Giles v. Family Court of Delaware*, 411 A.2d 599, 601 (Del. 1980). The *McDonnell Douglas* approach is not intended to be "rigid, mechanized, or ritualistic," but rather, it is "merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

Under this framework, a plaintiff must first establish a prima facie case by showing that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). If the plaintiff can make this showing, then the burden shifts to the defendant employer to offer a "legitimate, non-discriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. After the employer articulates this reason, the burden shifts back to the plaintiff to show that the stated reason is pretextual. *Id.* at 804. "To avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (cleaned up).

### III. DISCUSSION

#### A. Age Discrimination

Plaintiffs have established a prima facie case of age discrimination. Kenny and Gregory are both at least 40 years old (D.I. 82 at 3-4), and they are therefore members of the class protected by the ADEA. 29 U.S.C. § 631(a). Termination is clearly an adverse employment

action. Defendants contend the coaches were not "qualified" for their positions because, at the time of their termination, they were "not meeting the new Athletic Director's legitimate expectations"—namely, they weren't winning enough games, and they weren't treating athletes appropriately. (D.I. 78 at 3). Courts, however, rely only on objective factors in assessing whether a plaintiff was qualified for a position. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). Subjective factors, such as the athletic director's expectations for team performance and coach behavior, are "better left to the later stage of the *McDonnell Douglas* analysis" because they "are more susceptible of abuse and more likely to mask pretext." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990). Given that both Plaintiffs had decades of successful volleyball coaching experience, they were both qualified for their positions.

For the fourth prong of the prima facie case, there is an inference of age discrimination if the plaintiff is replaced by a "sufficiently younger" employee. *Mowafy v. Noramco of Delaware, Inc.*, 620 F. Supp. 2d 603, 612 (D. Del. 2009). Defendants argue there should be no such inference because Rawak was not aware of the ages of the new coaches who replaced Plaintiffs. (D.I. 71 at 14). Even if she did not know their exact birthdates though, she almost surely recognized that the new coaches were significantly younger than Plaintiffs based, if nothing else, on their résumés. Kenny's replacement was about seventeen years younger than her, and Gregory's replacements were about seventeen and twenty-eight years younger than her. (D.I. 82 at 4). While there is no specific age cut-off to meet the "sufficiently younger" standard, "different courts have held, for instance, that a five year difference can be sufficient, but that a one year difference cannot." *Sempier*, 45 F.3d at 729 (cleaned up). The substantial age gaps here are enough to give rise to an inference of discrimination. Plaintiffs have therefore made out a prima facie case of age discrimination.

7

The burden then shifts to the employer to offer a "legitimate, non-discriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. This is a "relatively light burden," and the employer satisfies it by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763.

Here, Defendants assert Rawak fired the coaches because she believed their behavior towards players was unprofessional. (D.I. 71 at 14). Specifically, Defendants say her decision was based on: (1) the way the coaches interacted with players during the games and practices Rawak watched; (2) the October 2016 parental complaint; and (3) the 2015 player surveys reporting verbal and mental abuse. (*Id.*). These are "legitimate, non-discriminatory" reasons for terminating employees. There is "no credibility assessment" at this stage. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). Defendants have therefore offered sufficient evidence to rebut Plaintiffs' prima facie case of discrimination.

The burden then shifts back to Plaintiffs to show these stated reasons are mere pretext designed to mask discrimination. *McDonnell Douglas*, 411 U.S. at 804. A plaintiff can meet this burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 765. If a plaintiff can discredit the employer's stated justifications, the plaintiff need not produce additional evidence to survive summary judgment. The prima facie case, combined with the rejection of the employer's proffered explanations, can be enough to infer discrimination. *Sempier*, 45 F.3d at 730-31.

8

Plaintiffs argue Defendants have been inconsistent in explaining why Rawak fired the coaches. (D.I. 72 at 16). Defendants have, at various times, cited some or all of the following: the 2016 parental complaint, the 2015 student survey responses, Rawak's observations of the coaches at practices and games, the anonymous 2016 letter, the 2014 investigation into Gregory, and the team's losing record. (*Id.* at 14). During the Oct. 5 meetings with Plaintiffs, for example, Rawak referred to the recent parental complaint, but she identified additional factors at her deposition. (Rawak Dep. 6-18). According to Plaintiffs, a reasonable factfinder would infer these multiple explanations are fabrications designed to hide the true discriminatory motive for the firings. (D.I. 72 at 16).

I disagree. Defendants have been consistent in explaining the primary reason for the terminations: Rawak believed the coaches behaved unprofessionally with athletes. The complaints, surveys, and observations are all factors that led Rawak to form this belief. These factors support, rather than contradict, each other. A reasonable factfinder would not infer Defendants are lying merely because they failed to list every factor involved in the decision at every opportunity. There is nothing suspicious, for example, about the fact that Rawak did not explain her decision in her Oct. 13 letters, which simply notified Plaintiffs they had been fired. (D.I. 71, Ex. 1, Ex. 2). She did not mention the student surveys during the Oct. 5 meetings, but there is no dispute she had not read them yet. (Rawak Dep. at 17-18).

Rawak mentioned the team's losing record as a factor in her decision during her deposition but not during her Oct. 5 meetings with Plaintiffs. (*Id.* at 89). The win-loss record is distinct from the other factors, which all relate to how the coaches treated the athletes. Employers can have multiple reasons for terminating an employee though. It is not contradictory for Rawak to believe the coaches acted inappropriately and to believe the coaches should have

9

won more games. Rawak has emphasized the coaches' behavior more than the win-loss record in explaining her decision, but a rational factfinder would not infer that these explanations are therefore "unworthy of credence." *Fuentes*, 32 F.3d at 765.

Defendants have never provided contradictory explanations for the decision or disavowed any of the explanations they have given. A plaintiff cannot avoid summary judgment by merely pointing out that the employer presented additional non-discriminatory reasons for its actions. That is not enough to suggest pretext. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 649 n. 15 (3d Cir. 1998) ("The mere fact that a defendant relies on a post hoc explanation does not in and of itself create a factual dispute about whether the explanation was pretextual. The plaintiff must point to evidence that demonstrates there is reason to disbelieve the explanation.") (cleaned up); *Bernhard v. Nexstar Broad. Grp., Inc.*, 146 F. App'x 582, 585 (3d Cir. 2005) (affirming summary judgment even though the employer had raised a new justification because that "does not change the reason for terminating [the employee] from the reason previously articulated. Instead, it merely present[ed] . . . an additional reason for the decision. We do not agree that a reasonable jury could view this assertion as a shift in the defendants' position . . . .") (cleaned up); *Vernon v. A & L Motor Sales*, 2009 WL 866851, at *7 (W.D. Pa. Mar. 30, 2009), *aff'd sub nom. Vernon v. A & L Motors*, 381 F. App'x 164 (3d Cir. 2010) ("That [d]efendant had an additional reason for her termination and voiced that additional reason in the context of [p]laintiff's unemployment compensation proceedings is not the kind of shifting reasons scenario that suggests that an employer's reason ought not to be believed.").

Plaintiffs insist the allegations against them are false. They argue the videos of practices and games show the coaches during intense competition, but not them behaving aggressively towards athletes. (D.I. 72 at 15). They argue "no reasonable athletic director" would make a

termination decision based on anonymous student athlete surveys. (*Id.* at 12). They deny ever making a player practice while sick and explain that those kinds of decisions are made by team medical staff. (*Id.* at 3). The team had a particularly difficult first half of the schedule, which explains the poor win-loss record, Plaintiffs argue. (*Id.* at 12).

The issue here though is not whether Kenny and Gregory were good coaches. It is not even whether Rawak's decision was fair. The issue is whether Rawak had a discriminatory motive. So whether Kenny and Gregory really made a sick player practice, whether they really engaged in verbal and mental abuse of players, and whether a difficult schedule excuses a poor win-loss record are not material facts that can prevent summary judgment. A reasonable factfinder would conclude Rawak fired the coaches because she believed their behavior was unprofessional—even though that belief may have been mistaken. There is no reason to infer this justification is pretext for age discrimination, and Defendants are therefore entitled to summary judgment.

### B. Sexual Orientation Discrimination

The DDEA prohibits discrimination based on sexual orientation. 19 Del. C. § 711(a). The *McDonnell Douglas* framework applies to claims arising under this statute. *Giles*, 411 A.2d at 601 (Del. 1980). Plaintiffs also allege Defendants are liable under 42 U.S.C. § 1983 for depriving them of their Fourteenth Amendment rights to equal protection. (D.I. 1 at 13). Both parties agree this constitutional claim is governed by *McDonnell Douglas*, citing cases involving race and gender discrimination. (D.I. 71 at 17; D.I. 72 at 19). *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (in which the Supreme Court "assume[d] the *McDonnell Douglas* framework is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. § 1983."); *Ford v. Cty. of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018) (a gender discrimination

11

case holding that the "analysis of employment discrimination claims under § 1983 mirrors the Title VII analysis."); *Lewis v. State of Delaware Dep't of Pub. Instruction*, 986 F.Supp. 848, 855 (D. Del. 1997) (a racial discrimination case holding the same). Defendants appear to accept the Fourteenth Amendment prohibits sexual orientation discrimination to the same extent that the DDEA does. (*See* D.I. 71 at 17). Given there is no dispute between the parties on this question, I apply the *McDonnell Douglas* analysis to both the statutory and constitutional sexual orientation discrimination claims.

The first question is thus whether Plaintiffs have established a prima facie case of sexual orientation discrimination. They are lesbians, suffered adverse employment actions, and, as discussed above, were qualified for their positions. For the fourth prong of the prima facie case, the plaintiff must establish that "similarly situated individuals outside the plaintiff's class were treated more favorably." *Kemske v. Johnson Controls, Inc.*, 52 F. Supp. 3d 688, 699 (D. Del. 2014). It's difficult to draw comparisons given how few coaches are employed in any collegiate athletic program. Plaintiffs note that Rawak hired or promoted several heterosexual coaches in various sports. (D.I. 72 at 17). But on the same day UD announced the mid-season firing of the volleyball coaches, it also announced the firing of the heterosexual male football coach. (D.I. 71, Ex. 17).

Ultimately, I find it unnecessary to resolve whether Plaintiffs have established a prima facie case of sexual orientation discrimination. Regardless of the prima facie case, Plaintiffs cannot show that Defendants' proffered "legitimate, nondiscriminatory" rational is pretextual. For the same reasons discussed above for age discrimination, Plaintiffs have not shown "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

unworthy of credence." *Fuentes*, 32 F.3d at 765. While Defendants have, at times, emphasized some reasons over others for the terminations, these reasons do not contradict each other, but instead, fit together as a coherent explanation for Rawak's actions. A rational factfinder would have no reason to conclude Defendants' justifications are pretext for sexual orientation discrimination.

## IV. CONCLUSION

For these reasons, I will grant Defendants' Motion for Summary Judgment. An Order consistent with this Opinion will be entered.